IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM CHAMBERS,                                    3:14-CV-1876-PK

                                                     FINDINGS AND
                                                     RECOMMENDATION

                     Plaintiff,

v.

WASHINGTON COUNTY, PAT GARRETT,
and JOSH McCARTHY,


                     Defendants.
_____

PAPAK, Magistrate Judge:

      Plaintiff William Chambers filed this action against defendants Washington County, Pat

Garrett (collectively with Washington County, the "Washington County defendants"), and Josh

McCarthy in the Circuit Court of the State of Oregon for Washington County on October 16,

2014.  By and through his complaint as filed in the Washington County court, Chambers alleged

Page 1 - FINDINGS AND RECOMMENDATION

the Washington County defendants' liability under 42 U.S.C. § 1983 for violation of his

constitutional rights to due process and to liberty, under Oregon common law for false

imprisonment, and under Oregon common law for negligence, and alleged the liability of

McCarthy, his former attorney, under Oregon common law for professional negligence. On

November 24, 2014, the Washington County defendants removed Chambers' action to this court.

On January 30, 2015, Chambers reported his claim against McCarthy settled. This court has

federal-question jurisdiction over Chambers' Section 1983 claim pursuant to 28 U.S.C. § 1331,

and may properly exercise supplemental jurisdiction over Chambers' state-law claims against the

Washington County defendants pursuant to 28 U.S.C. § 1367.[1]

Now before the court is the Washington County defendants' Federal Civil Procedure Rule

12(b)(6) motion (#4) to dismiss Chambers' claims against them. I have considered the motion,

oral argument on behalf of the parties, and all of the pleadings and papers on file. For the

reasons set forth below, the Washington County defendants' motion should be granted.

## LEGAL STANDARD

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

must contain more than a "formulaic recitation of the elements of a cause of action;" specifically,

it must contain factual allegations sufficient to "raise a right to relief above the speculative level."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the

speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts

that merely creates a suspicion [of] a legally cognizable right of action." *Id.*, *quoting* 5 C. Wright

---

[1] Because it appears that Chambers' claim against McCarthy has been settled, I make no finding herein as to whether removal of Chambers' professional negligence claim to this court was proper on subject-matter jurisdictional grounds.

& A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R. Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), *citing Iqbal*, 129 S. Ct. at 1949.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

As a preliminary matter, the Washington County defendants and Chambers request that this court take judicial notice of various matters of public record. Specifically, the Washington County defendants request that this court take judicial notice of adjudicative facts set forth in

Page 3 - FINDINGS AND RECOMMENDATION

(i) a bench warrant issued on June 12, 2001, by the Superior Court of Madison County of the State of Indiana for the arrest of William L. Chambers, identified as a white male, for felonious nonsupport of a dependent child, (ii) an order issued on October 1, 2012, by the Washington County court for the arraignment of William Chambers, setting an appearance for Chambers for October 9, 2012 in connection with fugitive proceedings initiated against him, and authorizing his incarceration pending the appearance of October 9, 2012, (iii) an order issued on October 9, 2012, by the Washington County to request a governor's warrant for Chambers' extradition to Indiana in connection with the then-ongoing fugitive proceedings against him and to establish as a condition for Chambers' release from custody that he post 10% of a bail amount set at $100,000, (iv) a motion and order issued on November 6, 2012, by the Washington County Circuit Court for the dismissal of the fugitive proceedings against Chambers, and (v) a copy of the Washington County Circuit Court's docket for the fugitive proceedings against Chambers, listing all filings and actions taken in connection with those proceedings, while Chambers requests that this court take judicial notice of adjudicative facts set forth in (i) a motion filed by the State of Indiana before the Superior Court of Madison County of the State of Indiana on October 17, 2012, to treat as *nolle prosequi* the felony nonsupport proceedings against William L. Chambers in that court, (ii) an order issued on October 23, 2012, by the Superior Court of Madison County of the State of Indiana to treat as *nolle prosequi* the felony nonsupport proceedings against William L. Chambers in that court, and (iii) a motion and order filed before the Washington County Circuit Court on November 6, 2012, by the State of Oregon to dismiss fugitive proceedings against Chambers in that court.

Federal Rule of Evidence 201(d) provides that "[a] court shall take judicial notice [of an

adjudicative fact] if requested by a party and supplied with the necessary information." An

adjudicative fact is subject to judicial notice when the fact is "not subject to reasonable dispute in

that it is either (1) generally known within the territorial jurisdiction of the trial court or (2)

capable of accurate and ready determination by resort to sources whose accuracy cannot be

reasonably questioned." Fed. R. Evid. 201(b). I agree with each set of parties that the identified

documents are public records whose authenticity may be accurately and readily determined, and

that each contains adjudicative facts material to issues raised by Chambers' allegations in support

of his causes of action against the Washington County defendants. On that basis, I take judicial

notice of all adjudicative facts contained within each of the five documents identified by the

Washington County defendants and each of the three documents identified by Chambers.

As a further preliminary matter, I note that, by and through his complaint, Chambers

alleges that on October 15, 2012, the Jail Commander for Madison County, Indiana, sent a

teletype message to the Washington County Circuit Court, and that each of Chambers' causes of

action against the Washington County defendants in these proceedings is premised in part on

information communicated by and through that teletype message. The teletype is not attached as

an exhibit to Chambers' complaint, but is offered into evidence by Chambers in connection with

his opposition to the Washington County defendants' motion to dismiss. Because the teletype

forms the basis underlying some or all of Chambers' claims remaining at issue in this action, the

court may treat it as incorporated by reference into Chambers' complaint, and on that basis may

consider its contents without conversion of the pending motion to dismiss into a Federal Civil

Procedure Rule 56 motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903,

907-908 (9th Cir. 2003); *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002).

Page 5 - FINDINGS AND RECOMMENDATION

## FACTUAL BACKGROUND

### I.    The Parties

Plaintiff Chambers is an individual resident of the State of Oregon.  Defendant Washington County is a county of the State of Oregon.  Defendant Garrett is, and at all material times was, Sheriff of Washington County.  Defendant McCarthy is the court-appointed attorney who represented Chambers in connection with fugitive proceedings brought against Chambers by the State of Oregon before the Washington County Circuit Court on October 1, 2012.

### II.    The Parties' Dispute[2]

On June 12, 2001, the Superior Court of Madison County of the State of Indiana issued a bench warrant for the arrest of William L. Chambers for nonsupport of a dependent child., a Class C felony under Indiana law.  The parties do not dispute that the "William L. Chambers" who was the subject of the June 12, 2001, bench warrant was plaintiff Chambers.

On September 30, 2012, Chambers was arrested in Washington County in connection with the June 12, 2001, bench warrant.  On October 1, 2012, Chambers was arraigned in Washington County and former defendant McCarthy was appointed to serve as his attorney in connection with fugitive proceedings against him.  The court ordered Chambers' detainment pending a fugitive hearing set for October 9, 2012.

On October 9, 2012, McCarthy appeared as Chambers' representative at the scheduled hearing.  At that hearing, bail was set for Chambers in the amount of $100,000, and the court established as a condition for Chambers' release that 10% of that amount be posted on his behalf.

---

[2] Except as otherwise noted, the following recitation constitutes my construal of the allegations of Chambers' complaint and of the matters properly subject to judicial notice in the light most favorable to Chambers.

Chambers refused to waive extradition, and in consequence the Washington County Circuit

Court directed that a governor's warrant for Chambers' extradition to Indiana be requested.  On

October 10, 2012, formal request for such governor's warrant issued.

On October 15, 2012, in response to the Washington County Circuit Court's request for a

governor's warrant, the Jail Commander for Madison County, Indiana, sent the Washington

County District Attorney's office, the Washington County Sheriff's office, and the Washington

County jail a teletype message as follows:

> While researhing [*sic*] for a gov. warrant it was determined that 1) the amount of
> money required for this to be a C felony had not been met, 2) the child in [*sic*]
> which the money was intended (victim) had passed away.
>
> Therefore the pros[ecutor's] office [for Madison County, Indiana] has decided that
> they are NOT going after a Gov. Warrant for this charge and will not Extradite.
>
> Warrant remains active at this time but is under review by the pros[ecutor's] office
> for a status of the case.

Also on October 15, 2012, the Madison County Jail Commander relayed the same information

via telephone to the Washington County Jail Commander.

On October 16, 2012, Chambers advised his court-appointed attorney, former defendant

McCarthy, that the Madison County prosecutor's office would not seek his extradition to Indiana

in connection with the June 12, 2001, bench warrant.

On October 17, 2012, the State of Indiana moved the Superior Court of Madison County

of the State of Indiana to treat as *nolle prosequi* the felony nonsupport proceedings against

Chambers in that court.

Chambers alleges that on October 20, 2012, the Washington County District Attorney's

office requested an increase in the amount of Chambers' bail, and that at a hearing in connection

Page 7 - FINDINGS AND RECOMMENDATION

with that request, McCarthy failed to advise the court that Indiana did not intend to seek

Chambers' extradition. Notwithstanding Chambers' allegations, the Washington County Circuit

Court docket for the fugitive proceedings against Chambers does not indicate that any request for

an increase in Chambers' bail was ever made, or that McCarthy made any appearance on

Chambers' behalf between the date of the October 15, 2012, teletype message and the date

Chambers was released from Washington County's custody. For purposes of determining the

merits of the pending motion to dismiss, I nevertheless assume the truth of Chambers'

allegations, and that the omission of the bail increase request and of McCarthy's appearance on

Chambers' behalf on or around October 20, 2012, from the Washington County Circuit Court

docket was the result of administrative error.

On October 23, 2012, the Madison County court issued an order to treat as *nolle prosequi*

the felony nonsupport proceedings against Chambers.

On or around October 24, 2012, Chambers' wife advised McCarthy that the State of

Indiana would not seek Chambers' extradition on felony nonsupport charges. Also on October

24, 2012, an unspecified party provided the Washington County defendants with a copy of the

Madison County court's October 23, 2012, *nolle prosequi* order.

On November 6, 2012, the State of Oregon moved for dismissal of the fugitive

proceedings against Chambers on the asserted ground that "a teletype ha[d] been received from

[the State of Indiana] by the Washington County D.A.'s Office asking that their hold be

withdrawn." That same day, a release hearing was held before the Washington County Circuit

Court, at which McCarthy appeared as Chambers' legal representative. At that hearing, the

charges against Chambers were dismissed. Chambers was released from custody that same day.

It is Chambers' express position that the delay between Washington County's receipt of the teletype message of October 15, 2012, and his release from custody on November 6, 2012, constituted both (i) a deprivation of his Constitutional rights to due process and to liberty and (ii) false imprisonment. It is further Chambers' express position that such delay was caused by the Washington County defendants' policy and/or custom and practice of "permitting the jail commander to hold a person in custody without a lawful order to do so," of "permitting the jail commander to hold a person in custody even when the jail commander has information and knowledge that a person is being held in the jail without legal authority," or of "permitting the jail commander to hold a person in custody even when the jail commander has information and knowledge that a person is being held in jail when the original state that had a lawful order to hold the person withdraws that order." Necessarily if implicitly in the alternative, Chambers further takes the express position that such delay was caused by the Washington County defendants' negligence.

## ANALYSIS

### I.    Chambers' Claims against Garrett

As noted above, Chambers alleges Garrett's liability in connection with his Section 1983 claim for violation of his Constitutional due process and liberty rights, with his state-law false imprisonment claim, and with his state-law negligence claim. There appears to be no dispute that, in connection with all three claims against Garrett, Garrett is alleged to have acted at all material times under color of state law in his capacity as Sheriff of Washington County, and that he is sued in his official capacity only.

### A.    Chambers' Section 1983 Claim against Garrett

By and through his complaint, Chambers expressly alleges the liability of both Washington County defendants on the basis of those defendants' purported "policy and/or custom and practice" of "permitting the jail commander to hold a person in custody without a lawful order to do so," of "permitting the jail commander to hold a person in custody even when the jail commander has information and knowledge that a person is being held in the jail without legal authority," or of "permitting the jail commander to hold a person in custody even when the jail commander has information and knowledge that a person is being held in jail when the original state that had a lawful order to hold the person withdraws that order." Although the issue was not raised by the Washington County defendants in support of their motion to dismiss, I note that other than by virtue of purportedly maintaining such "policy and/or custom and practice," Chambers does not allege Garrett's personal involvement in the complained-of Constitutional deprivations.

Allegations of liability on the sole basis of a "policy and/or custom and practice" can support the liability of a municipality under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), *see, e.g., Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006), but cannot support the liability of an individual, *see, e.g., Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001). At oral argument in connection with the Washington County defendants' motion to dismiss, counsel for Chambers conceded on that basis the inadequacy of his pleading to support a Section 1983 claim against Garrett.

Chambers has not requested leave to amend his complaint to allege Garrett's personal involvement in the complained-of deprivations. For reasons addressed by the Washington

County defendants in support of their motion, it would in any event be futile to grant such leave. "[P]ublic officials who ministerially enforce facially valid court orders are entitled to absolute immunity." *Engebretson v. Mahoney*, 724 F.3d 1034, 1038 (9th Cir. 2013), *citing Matthews v. Densmore*, 109 U.S. 216, 218-219 (1883), *Erskine v. Hohnbach*, 81 U.S. 613, 616-617 (1872); *see also id.* at 1039-1040 (and cases cited therein); *Stein v. Ryan*, 662 F.3d 1114, 1119-1120 (9th Cir. 2011); *Coverdell v. Department of Social & Health Services*, 834 F.2d 758, 764-765 (9th Cir. 1987). Construing Chambers' allegations and the facts of which this court is properly cognizant in the light most favorable to Chambers, it is clear that (i) Chambers' incarceration between October 15, 2012 (the date the Washington County defendants received the teletype message by and through which it is Chambers' position that those defendants knew or should have known that his continued incarceration was purportedly improper), and November 6, 2012 (the date Chambers was released from custody) was pursuant to one or more facially valid court orders (the Washington County Circuit Court orders of October 9, 2012, and/or October 1, 2012), that (ii) at no time prior to November 6, 2012, was either the court order of October 9, 2012, or the court order of October 1, 2012, vacated, that (iii) the earliest date upon which any facially valid court order for Chambers' release from custody issued was November 6, 2012, and that (iv) Chambers was released from custody promptly following issuance of the court order of November 6, 2012. In consequence, Garrett enjoys absolute judicial or quasi-judicial immunity from suit in connection with Chambers' incarceration between October 1, 2012, and November 6, 2012. *See Engebretson*, 724 F.3d at 1038.

For the foregoing reasons, the Washington County defendants' motion to dismiss should be granted as to Chambers' Section 1983 claim against Garrett, and that claim should be

dismissed without leave to amend to the extent alleged against Garrett.

**B.    Chambers' State-Law Claims against Garrett**

Although the issue was not raised by the Washington County defendants in support of

their motion to dismiss, it is a well established matter of Oregon statutory law that no tort claim

may be maintained against any state official in connection with that official's performance of his

or her employment duties. *See* Or. Rev. Stat. 30.265(1), (2); *see also Clarke v. Or. Health Scis.*

*Univ.*, 343 Or. 581, 589-590 (2007); *Jensen v. Whitlow*, 334 Or. 412, 417 (2002).  Under Section

30.265(1), the sole cause of action available to an injured party for the torts of a public official is

an action against the public body that employs that official. *See* Or. Rev. Stat. 30.265(1); *Clarke*,

343 Or. at 589.  Here, each of the state-law tort claims alleged against Garrett is also alleged

against Washington County, the public body that employs him.  In consequence (as Chambers

conceded at oral argument), the Washington County defendants' motion to dismiss should be

granted as to Chambers' state-law claims against Garrett, and Chambers' false imprisonment and

negligence claims should be dismissed without leave to amend to the extent alleged against

Garrett.

**II.    Chambers' Claims against Washington County**

As noted above, Chambers alleges Washington County's liability on a *Monell* theory in

connection with his Section 1983 claim for violation of his Constitutional due process and liberty

rights, and additionally alleges Washington County's liability under state law for false

imprisonment claim, and, in the alternative to his Section 1983 claim, for negligence.

**A.    Chambers' Section 1983 Claim against Washington County**

Municipal liability under Section 1983, frequently referred to as *Monell* liability, is

predicated on the deprivation of a plaintiff's rights caused specifically by operation of a

municipal policy or custom:

> Municipalities are "persons" under 42 U.S.C. § 1983 and thus may be liable for
> causing a constitutional deprivation. *Monell* [*v. Dep't of Soc. Servs.*], 436 U.S.
> [658,] 690 [(1978)]. A municipality may not be sued under § 1983 solely because
> an injury was inflicted by its employees or agents, however. *Id.* at 694. Instead, **it
> is only when execution of a government's policy or custom inflicts the injury
> that the municipality as an entity is responsible.** *Id.* A policy is "'a deliberate
> choice to follow a course of action . . . made from among various alternatives by
> the official or officials responsible for establishing final policy with respect to the
> subject matter in question.'" *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002)
> (*per curiam*) (*citing Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)
> (*quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L.
> Ed. 2d 452 (1986)).

*Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (emphasis supplied). "The

'official policy' requirement was intended to distinguish acts of the *municipality* from acts of

*employees* of the municipality, and thereby make clear that municipal liability is limited to action

for which the municipality is actually responsible." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th

Cir. 1999) (emphasis original; some internal quotation marks omitted), *quoting Pembaur v. City

of Cincinnati*, 475 U.S. 469, 479-480 (1986). It is well established, however, that the policy need

not have been expressly adopted by the municipality, but rather can take the form of a

"longstanding practice or custom" so widespread "as to have the force of law." *Id., quoting

Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) *and citing  Board of County Comm'rs

of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). In addition, the official-policy requirement

may be satisfied in case of isolated deprivations of rights where the deprivation is caused by a

person with "final policymaking authority" for the municipality, *id., citing City of St. Louis v.

Praprotnik*, 485 U.S. 112, 123 (1988) (plurality), where a person with such final policymaking

authority for the municipality expressly ratifies the conduct of a subordinate which caused the

Page 13 - FINDINGS AND RECOMMENDATION

deprivation, *id.* at 1238, *citing Praprotnik*, 485 U.S. at 127, or where a person with such final

policymaking authority affirmatively acts with deliberate indifference to deprivations caused by a

subordinate's conduct, *see id.* at 1240, *citing City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

However the official-policy requirement is satisfied, the plaintiff must further establish that the

policy "was (1) the cause in fact and (2) the proximate cause of the constitutional deprivation."

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *citing Arnold v. International Business

Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

The *Gibson* court acknowledged in connection with *Monell* liability that "it is difficult to

determine the subjective state of mind of a government entity," *Gibson*, 290 F.3d at 1188, n. 10,

*citing Farmer*, 511 U.S. at 841, but noted that the requisite state of mind can nevertheless be

proven by at least two methods: "First, it is certainly possible that a municipality's policies

explicitly acknowledge that substantial risks of serious harm exist.  Second, numerous cases have

held that municipalities act through their policymakers, who are, of course, natural persons,

whose state of mind can be determined." *Id.*, *citing Board of County Comm'rs of Bryan County

v. Brown*, 520 U.S. 397, 403-404 (1994).  Nevertheless, "it is not always necessary to prove a

person's subjective awareness, as this inquiry is 'subject to demonstration in the usual ways,

including inference from circumstantial evidence.'" *Id.* at 1190, *quoting Farmer*, 511 U.S. at

842.

Here, as noted above, Chambers alleges Washington County's *Monell* liability on the

basis of its alleged policy and/or custom and practice of "permitting the jail commander to hold a

person in custody without a lawful order to do so," of "permitting the jail commander to hold a

person in custody even when the jail commander has information and knowledge that a person is

Page 14 - FINDINGS AND RECOMMENDATION

being held in the jail without legal authority," or of "permitting the jail commander to hold a person in custody even when the jail commander has information and knowledge that a person is being held in jail when the original state that had a lawful order to hold the person withdraws that order." The Washington County defendants move for dismissal of Chambers' Section 1983 claim primarily on grounds of the County's purported absolute immunity to suit in connection with the conduct complained of here, and secondarily on the grounds that Chambers' allegations of improper policy and/or custom and practice are too vague and/or conclusory to support a finding of *Monell* liability.

The Washington County defendants' primary argument is not well taken. It is well established that "municipalities do not enjoy immunity from suit -- either absolute or qualified -- under § 1983," under any circumstances. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993). The Washington County defendants are therefore not entitled to dismissal of Chambers' Section 1983 claim against Washington County on immunity grounds.

By contrast, the Washington County defendants' secondary argument in favor of dismissal of Chambers' Section 1983 claim, although cursorily articulated, has discernable merit. As to Chambers' first- and second-proffered bases for Washington County's municipal liability -- its alleged policy and/or custom and practice of "permitting the jail commander to hold a person in custody without a lawful order to do so" or of "permitting the jail commander to hold a person in custody even when the jail commander has information and knowledge that a person is being held in the jail without legal authority" -- it is clear that neither can have been either the "cause in fact" or the "proximate cause of the constitutional deprivation" Chambers complains of, *Trevino*,

Page 15 - FINDINGS AND RECOMMENDATION

99 F.3d at 918, in that the allegations construed in the light most favorable to Chambers and the adjudicative facts of which this court is properly cognizant clearly establish that Chambers was at all material times incarcerated pursuant to a lawful and facially valid court order expressly conferring legal authority to do so upon the County. As Chambers expressly conceded at oral argument in connection with the Washington County defendants' motion to dismiss, Chambers' theory of Washington County's municipal liability under Section 1983 therefore necessarily fails without possibility of cure by amendment to the extent premised on either of the first two proffered bases.

The analysis differs as to Chambers' third-proffered basis for Washington County's municipal liability, namely the County's alleged policy and/or custom and practice of "permitting the jail commander to hold a person in custody even when the jail commander has information and knowledge that a person is being held in jail when the original state that had a lawful order to hold the person withdraws that order." Again, the proffered basis as currently alleged falls afoul of adjudicative facts of which this court is properly cognizant, in that Chambers' incarceration by Washington County was not pursuant to the Madison County bench warrant of June 12, 2001, which was vacated by the Madison County court effective October 23, 2012, but rather pursuant to the Washington County Circuit Court's orders of October 1 and 9, 2012, which were never vacated and were not superceded prior to the date of Chambers' release from custody; for that reason, Chambers' Section 1983 claim against Washington County is subject to dismissal to the extent premised on Chambers' third-proffered basis for the County's *Monell* liability. However, at oral argument Chambers clarified that his intention in articulating the third-proffered basis was to allege that Washington County maintains a policy, custom, or practice of affirmatively

prohibiting its jail commander and/or other officials from disseminating information within such officials' possession and control to incarcerated persons, their counsel, and/or judicial bodies, where such information bears upon the possibility that an order pursuant to which an incarcerated person is being held in custody may be subject to vacatur. Presumably, if given the opportunity to amend his pleading, Chambers would modify his allegations in accordance with his expressed intent. If alleged, that policy or practice (by contrast with the first two alleged policies or practices) would not fall immediately afoul of any adjudicative fact of which this court is properly cognizant.

I nevertheless find that to grant Chambers leave to amend his pleading to clarify the alleged basis of Washington County's *Monell* liability would be futile, on at least two grounds. First, such a policy can have been neither the "cause in fact" nor the "proximate cause of the constitutional deprivation" Chambers complains of, *Trevino*, 99 F.3d at 918, in that Chambers alleges that on October 16, 2012, he personally advised McCarthy, his court-appointed defense counsel, of the Madison County jail commander's teletype message of October 15, 2012, and its contents, and that on October 24, 2012, his wife personally advised McCarthy of the Madison County court's *nolle prosequi* order of October 23, 2012. McCarthy, unlike Washington County or any of its officials, owed Chambers a clear and well-established duty to act with reasonable diligence and promptness in representing Chambers' interests as his appointed advocate. *See, e.g.*, Or. R. P. C. 1.3. Because McCarthy actually and reasonably promptly received the information that Washington County was *arguendo* obliged to disseminate to him, and because he was subject to a duty to make reasonably diligent efforts to use that information to effect Chambers' release from custody, Washington County's failure to provide the information directly

to McCarthy or to the court cannot have been the cause of any delay in Chambers' release.

Second, no decision of any court of any jurisdiction of which I am aware has ever imposed a duty to disseminate potentially exculpatory information on a municipality or prison official, Chambers has identified no such decisions, and Ninth Circuit jurisprudence strongly suggests that no such duty could exist as a matter of law. In *Stein v. Ryan, supra*, the Ninth Circuit considered the case of a plaintiff who had been incarcerated for "just over three years in prison pursuant to an erroneous sentence" following issuance of a decision by the Arizona Supreme Court (*State v. Peek*, 219 Ariz. 182, 195 P.3d 641 (2008)) which established the affirmative illegality of the plaintiff's sentencing order. *Stein v. Ryan*, 662 F.3d 1114, 1117 (9th Cir. 2011). In connection with a Section 1983 claim premised on the violation of the plaintiff's Eighth Amendment rights, the Ninth Circuit reasoned as follows:

> [Stein's] allegation that prison officials should have discovered that his sentence was illegal does not establish that they acted with deliberate indifference to his liberty interest. **Prison officials have the duty to execute the sentencing orders delivered by the courts.** They may have a duty to calculate accurately the prisoner's release date according to the terms of a sentencing order, **but no reasonable prison official would understand that executing a court order without investigating its potential illegality would violate the prisoner's right to be free from cruel and unusual punishment.**
>
> * * *
>
> *Peek* made clear that Stein was entitled to have his sentence vacated as a matter of Arizona law. **However, prison officials have a duty to enforce a sentencing order until the order is vacated or the prisoner otherwise becomes eligible for release. To say that defendants should have released Stein as soon as the Arizona Supreme Court decided** *Peek* **(or at any time prior to the court's order vacating sentence) would be to impose on them the judicial responsibility of reviewing the legality of a sentencing order.** In other words, *Peek* may have given Stein the right to have his sentence vacated, but it was the vacatur of his sentence by the court hearing his case that gave him the right to be released. Even if *Peek* made it clear that Stein's sentence was erroneous, defendants did not violate his constitutional rights by holding him in prison while

Page 18 - FINDINGS AND RECOMMENDATION

the sentencing order remained in force.

*Stein*, 662 F.3d at 1119-1120 (emphasis supplied).[3]  Although the *Stein* court did not expressly

hold that incarcerating officials were not subject to any duty to disseminate information regarding

the potential that an order of incarceration could be subject to vacatur, its reasoning strongly

suggests that no such duty exists.  In the absence of any court decision to the contrary I decline to

recommend that the court make new law by finding that a valid Section 1983 claim could be

premised on any such duty.

> For the foregoing reasons, the Washington County defendants' motion to dismiss should

be granted as to Chambers' Section 1983 claim against Washington County, and that claim

should be dismissed without leave to amend to the extent alleged against the County.

**B.      Chambers' State-Law Claims against Washington County**

> The Washington County defendants argue that Washington County is entitled to

immunity from suit in connection with each of Chambers' state-law claims against it.  I agree.

The Oregon Supreme Court has recognized the same principles of judicial (or quasi-judicial)

immunity recognized in *Engebretson* and discussed above:

> The common law has long recognized that some public officials should be
> immune from civil actions for some of the actions taken in the execution of their
> public employment.  Judicial immunity has long been a part of the immunities
> afforded public officials, being mentioned in the Book of Assizes, 27 Edw III, pl
> 18 (1354).  The doctrine of immunity for acts performed by a judge acting within
> the court's jurisdiction has been recognized in this country since at least *Randall v.*

---

[3] *Stein* further establishes that a person subject to incarceration receives all due process
required under the Constitution when the person has an opportunity to be heard and to present a
defense *prior* to incarceration, and that incarcerating officials' subsequent actual or constructive
knowledge that the original basis for the person's incarceration had become invalid following
such opportunity does not trigger any new or further right to additional process.  *See Stein*, 662
F.3d at 1119.

Page 19 - FINDINGS AND RECOMMENDATION

*Brigham*, 74 U.S. (7 Wall) 523, 19 L Ed 285 (1868).

This court recognized the existence and the limitations on the doctrine of judicial immunity in *Shaw v. Moon*, 117 Or 558, 245 P 318 (1926). The common law recognized that there is a public good to be gained from the principled and fearless decision-making of judicial officers freed from concern over suits by disappointed litigants. To gain this good, it is necessary to cloak judicial officers with immunity from civil liability for their acts, so long as these acts are within the jurisdiction of the officer. ...

* * *

**Immunity for judicial acts extends not merely to judges.** Other officials who are performing acts associated with the judicial process may be protected as well. *Watts v. Gerking*, 111 Or 641, 222 P 318, 228 P 135 (1924). This court has indicated that the common-law immunity for judicial and quasi-judicial acts is part of those immunities preserved for discretionary acts under the OTCA, ORS 30.265(3).

Judicial immunity depends on the performance of a judicial function. When such judicial functions are performed by a public officer other than a judge, the immunity is often referred to as quasi-judicial immunity, but this is a distinction of name and not a distinction of immunity. *Watts v. Gerking, supra*; *see also Imbler v. Pachtman*, 424 U.S. 409, 423, 96 S Ct 984, 47 L Ed 2d 128 (1976). **Judicial immunity is granted or withheld on the basis of the nature of the function being performed, and not on the basis of the office.** *Shaw v. Moon, supra*; *see also Forrester v. White*, 484 U.S., 108 S Ct 538, 98 L Ed 2d 555 (January 12, 1988).

**Several factors are commonly examined to determine if a particular duty can be considered judicial or quasi-judicial for the purpose of extending immunity to the official performing the action. These factors include whether the official's actions are functionally comparable to judicial actions or involve decisions normally performed by judges in their judicial capacity, whether the action depends on legal opinions or discretionary judgments comparing the facts of a present situation with general legal questions, and whether the acts in question are primarily concerned with the official's role as a judicial or quasi-judicial officer.** *See Ashbrook v. Hoffman*, 617 F2d 474 (7th Cir 1980); *Daniels v. Kieser*, 586 F 2d 64 (7th Cir 1978), *cert den* 441 U.S. 931 (1979); *Wilkinson v. Ellis*, 484 F Supp 1072 (ED Pa 1980).

*Praggastis v. Clackamas County*, 305 Or. 419, 426-427 (1988) (footnote omitted; emphasis

supplied); *see also Fay v. Portland*, 311 Or. 68, 73 (1991) ("For a public official or employee to

have absolute immunity for acts performed under a court order or directive, two criteria must be established. First, the court order or directive must be a permissible exercise of judicial authority. Second, the acts must comply with the court order or directive." (footnote omitted)).

It is clear as a matter of law that the Washington County Circuit Court's orders of October 1 and 9, 2012, constituted permissible exercises of judicial authority. *See, e.g.*, Or. Rev. Stat. 135.010 *et seq.*, 135.070 *et seq.*, 135.175 *et seq.*, 135.230 *et seq.* Moreover, as discussed above, it is established that Chambers' incarceration between October 15, 2012 (the date the Washington County defendants received the teletype message by and through which it is Chambers' position that the County knew or should have known that his continued incarceration was purportedly improper), and November 6, 2012 (the date Chambers was released from custody) was in compliance with and pursuant to those orders. In consequence, Washington County is entitled to absolute immunity from suit in connection with Chambers' false imprisonment and negligence claims as a matter of Oregon law. *See Praggastis*, 305 Or. at 426-427; *Fay*, 311 Or. at 73.[4] The Washington County defendants' motion to dismiss should therefore be granted as to Chambers' state-law claims against Washington County, and the false imprisonment and negligence claims should be dismissed without leave to amend to the extent alleged against the County.

## CONCLUSION

For the reasons set forth above, the Washington County defendants' motion (#4) to

---

[4] By contrast with the absence of municipal immunity under Section 1983, discussed *supra*, no Oregon case holds that municipalities do not enjoy immunity from tort in the same manner as state officials. This follows from the fact that municipal liability under Section 1983 is not a form of vicarious liability for the acts of the municipality's officials, but rather is premised on a municipal policy of practice of causing deprivations of constitutional rights independent of the actions of municipal officials, whereas the liability of public bodies in tort under Oregon law is expressly premised on the tortious conduct of the officials themselves.

dismiss should be granted, and Chambers' Section 1983, false imprisonment, and negligence claims against the Washington County defendants should be dismissed with prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 9th day of February, 2015.

Honorable Paul Papak
United States Magistrate Judge